# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 19 2017, 7:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jon A. Bragalone
Larry L. Barnard
Carson Boxberger LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEES

Patrick L. Proctor
Eilbacher Fletcher, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rohrman Automotive Group, <br> *Appellant-Defendant*, <br><br> v. <br><br> Paul Pratico and Joy DenHouter, <br> *Appellees-Plaintiffs*. | April 19, 2017 <br><br> Court of Appeals Case No. <br> 02A03-1604-SC-850 <br><br> Appeal from the Allen Superior Court, Small Claims Division <br><br> The Honorable Brian D. Cook, Magistrate <br><br> Trial Court Cause No. <br> 02D01-1404-SC-6541 |

**Brown, Judge.**

Rohrman Automotive Group ("Rohrman") appeals from the judgment of the small claims court in favor of Paul Pratico and Joy DenHouter (together, the "Purchasers") in the amount of $6,000. Rohrman raises two issues which we consolidate and restate as whether the judgment of the court is clearly erroneous. We affirm.

## Facts and Procedural History

On June 12, 2013, the Purchasers bought a 2000 Subaru Outback from Rohrman for $5,802.50 pursuant to a purchase order which indicated the vehicle was "SOLD AS IS, WITH ALL FAULTS." Plaintiffs' Exhibit 4. Joseph Davis was a manager at the time of the sale and served as Rohrman's sales representative. At the time of the sale, Rohrman agreed to perform certain repair work on the vehicle and Davis authorized the work as set forth in a work order (the "Work Order") which, in the fields for "Promised" and "R.O. Opened," provided the date of June 4, 2013, and in the field for "Ready" provided the date of June 11, 2013. Plaintiffs' Exhibit 3. The Work Order identified the name of service advisor Jason Keefer, indicated the vehicle had approximately 121,893 miles, and contained a lengthy itemized list of work to be performed and performed on the vehicle, stating in part:

> D  RESURFACE BOTH FRONT BRAKE ROTORS
>> MACHINE RESURFACED BOTH FRONT BRAKE ROTORS
>> 1395 IUS 1.50 . . . .                          75.00
> E  REPLACE REAR BRAKE PADS AND BOTH REAR BRAKE ROTORS

> RBS REPLACED REAR BRAKE PADS AND BOTH
> REAR BRAKE ROTORS
>
> | 1395 IUS 1.50 . . . . | 75.00 |
> | 1 . . . PAD KIT DISK BRAKE R . . . | 67.96 |
> | 2 . . . BRAKE DISC R . . . . | 159.92 |

*Id.*[1]

[3] DenHouter took the vehicle back to Rohrman, and an invoice dated December 17, 2013, states: "A client states that when going 30mph and went to stop and had trouble stopping. Check and advise." Plaintiffs' Exhibit 8. The invoice identifies the name of service advisor Deborah Miller and the name of service technician Terrence Bowen. The invoice further states "front sway bar broken," and notes that the vehicle had 124,897 miles and the total charge was $98.95. *Id.*

[4] The Purchasers then had the vehicle towed to The Import Doctors, and Shayne Cattron, a former Subaru certified mechanic, examined the vehicle which at that time had approximately 124,899 miles. Cattron believed, based on condition and wear, that the rear rotors had more than 3,000 miles on them and that it was highly unlikely that the front rotors had been within specification 3,000 miles earlier. The invoice of the Import Doctors states "front brake pads and rotors need replaced," "brake master cylinder is leaking internally, needs

---

[1] The Work Order includes a total amount billed of $1,471.63. Terrence Bowen, a service technician for Rohrman, indicated that the amount represents the work completed and "billed to a vehicle but not to an independent customer." Transcript at 98.

new master cylinder," and "rear brake rotors are glazed and rust pitted, needs rotors." Plaintiffs' Exhibit 2. The Import Doctors performed work on the vehicle in January 2014 which included, among other things, replacement of the front brake pads and rotors, the rear brake rotors, the brake master cylinder, and the front sway bar.[2]

On April 30, 2014, the Purchasers filed a Notice of Claim in the Allen Superior Court, Small Claims Division, alleging that Rohrman breached specific warranties, breached its contract, and "committed fraud by claiming it performed repair work that it had not in fact performed." Appellant's Appendix at 7. The small claims court held a bench trial at which the Purchasers, Davis, Bowen, and Cattron testified, and the court admitted a number of exhibits including the Work Order of June 2013, the June 12, 2013 purchaser order, Rohrman's December 17, 2013 invoice, and The Import Doctors' January 2014 invoice.[3]

---

[2] The Import Doctors' invoice shows a total charge of $2,290.37. The invoice reflects a charge for towing and seven line items related to parts and labor to replace the front and rear brakes and the brake master cylinder, and the sum of those eight line items equals $714.94.

[3] The transcript in the record covers the proceedings of January 27, 2015, but not those on December 8, 2014. The Purchasers assert that no court reporter was requested during the first day of trial, that the fact no transcript was available does not excuse Rohrman from the duty to present a verified statement of the evidence, that Rohrman has thus waived its argument that the trial court's findings do not support the judgment on the claim of fraud, and alternatively the evidence from the second day of the trial is sufficient to support the court's finding of fraud. The record contains the exhibits presented by the parties and the transcript for the proceedings on January 27, 2015, including all or part of the testimony of DenHouter, Pratico, Cattron, Davis, and Bowen, and as set forth below our review of the record reveals evidence sufficient to support the court's judgment.

[6] When asked what specific promises were made to her about repairs that were supposed to have been made to the vehicle, DenHouter testified that "they were all outlined for us" in the Work Order presented as Plaintiffs' Exhibit 3. Transcript at 13. She testified that she had conversations with Davis and the mechanics at Rohrman and that she and Pratico were told the brakes needed to be repaired. She indicated that, at the time she purchased the vehicle, she believed Rohrman had completed the brake work. Pratico indicated that the mechanic told him that the rear brake rotors were pitted and needed to be replaced, that the front brakes were below the legal limit, and that his understanding was that the work was going to be performed. When asked if the Work Order introduced as Plaintiffs' Exhibit 3 was "an invoice that Rohrman had given you after the work had been done," Pratico responded affirmatively, and when asked "[a]nd it was given to you on June 11th . . . – or excuse on June 11th when you bought the car – before you took possession of the car," he stated that was correct. *Id.* at 45.

[7] Davis indicated that he authorized the Work Order and it was his understanding the work was performed. When asked "you said that it was your understanding that the work had been done because someone told you that" and "[w]ho told you that," Davis answered "[t]he service manager would have," that at the time the service manager was Jason Keefer, and that Keefer was no longer with Rohrman. *Id.* at 87. Bowen stated he was a service

technician for Rohrman, that he was aware of the technician, Adam Raden,[4] who did the work on the Subaru, that he had no reason to believe Raden did not do the work as stated in the Work Order, and that Raden no longer worked for Rohrman. When shown a brake rotor in a box,[5] Bowen testified that it looked like a rear rotor, that he would not place the rotor on a vehicle in its current condition, that he would measure it, and that if it was within specification he would resurface and drive it.

[8] Cattron testified that he was formerly a certified Subaru mechanic. When asked if the rear rotor had 3,000 miles on it, Cattron testified "[n]o, it does not. I[t] has more." *Id.* at 118. When asked about the front rotor, Cattron replied that "[t]hose are - definitely that was below spec when he came to my shop," that "[w]e marked them," that "if they turn these rotors to spec you would have to wear off pretty much a millimeter and a half in three thousand (3,000) miles," and it was "[h]ighly unlikely that's going to happen." *Id.* The Purchasers' counsel argued that attorney fees "should be part of cost and outside the jurisdictional limit of the Court." *Id.* at 121. The Purchasers submitted "Plaintiffs' Legal Memorandum Regarding Attorneys Fees and the Issue of Small Claims Court's Jurisdiction" arguing that sometimes the law allows attorney fees to be recovered "as part of the cost" and asked the court to

---

[4] The transcript states "Adam Raden [phonetics]." Transcript at 110.

[5] Pratico had earlier indicated he brought a box of parts which he obtained from Cattron, the parts came off the Subaru, and they were in substantially the same condition as when he received them.

"hold that an award of appellate attorney fees under I.C. § 34-24-3-1 [the Indiana Crime Victims Relief Act] is not part of the 'amount sought' within the meaning of I.C. § 33-29-2-4, and is not subject to the small claims court's jurisdictional limitation."[6]  Appellee's Appendix Volume II at 2-4.

[9]     On March 14, 2016, the court issued an order in favor of the Purchasers and against Rohrman in the amount of $6,000.  The order states:

1.     The [Purchasers] purchased a 2000 Subaru Outback from [Rohrman] on June 12, 2013.  The total purchase price for the automobile was $5,802.50.  The parties executed a sales order on June 12, 2013.  The automobile was purchased "AS IS."

* * * * *

6.     The [Purchasers'] did carry their burden of proof in showing, **more likely than not**, that some of the repairs allegedly performed by [Rohrman] prior to the original sale were not in fact performed.  Specifically, the [Purchasers] presented the testimony of a certified mechanic showing that the brakes on the automobile were most likely not replaced or repaired 1000 miles prior to their failure.[7]  Rather, he stated the brakes were old and worn and needed to be replaced.  [Rohrman's] invoice dated June 4, 2013, clearly states that the front brake rotors were resurfaced and the rear brake pads and rotors

---

[6] The Purchasers' counsel submitted the memorandum near the end of the bench trial, the court noted that it would provide Rohrman with an opportunity to respond, and an entry in the chronological case summary indicates that Rohrman filed a "Defendant's Response in Opposition to Plaintiff's Memorandum Regarding Attorney's Fees."  Appellant's Appendix at 4.  However, Rohrman did not include a copy of its response in its appendix.

[7] The evidence indicates the vehicle was driven approximately 3,000 miles.

were replaced. The evidence shows **more likely than not** that it did not happen. [Rohrman's] actions amount to fraud. They clearly, on a written invoice, stated that all the brake work was performed, when it [sic] fact, it was not.

7.    The [Purchasers] presented evidence showing that they had the brake system repaired at a total cost of $714.94 (this includes the tow to the repair shop). The [Purchasers] are entitled to three (3) times that amount due to [Rohrman's] fraudulent behavior in the amount of $2,144.82.

8.    The [Purchasers] failed to carry their burden of proof in showing that they are entitled to any further amounts for repairs or service made to the automobile. They received a general promise to make the automobile safe and dependable. The evidence showed that some work was performed by [Rohrman] to fulfill that promise.

9.    Due to [Rohrman's] fraudulent action the [Purchasers] are entitled to collect reasonable attorney fees in the amount of $3,855.18.

Judgment for [the Purchasers] and against [Rohrman] in the amount of $6,000.00. Costs to [Rohrman].

Appellant's Appendix at 8-9, Appellee's Appendix Volume II at 6-7 (emphases added).

### *Discussion*

[10]    The issue is whether the judgment of the small claims court is clearly erroneous. Judgments in small claims actions are subject to review as prescribed by relevant Indiana rules and statutes. Ind. Small Claims Rule 11(A); *Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013). In the

appellate review of claims tried by the bench without a jury, the reviewing court shall not set aside the judgment unless clearly erroneous. Ind. Trial Rule 52(A); *Eagle Aircraft*, 983 N.E.2d at 657. The appellate tribunal does not reweigh the evidence or determine the credibility of witnesses but considers only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Eagle Aircraft*, 983 N.E.2d at 657. This deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. *Id.* We presume that the trial court correctly applied the law. *Id.* However, "this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction." *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). A trial court's findings control only as to the issues they cover and a general judgment controls as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.* Findings will be set aside only if they are clearly erroneous. *Id.* In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.*

[11] Rohrman argues that the trial court's judgment awarding punitive damages was clearly erroneous because the court did not find that the Purchasers presented

clear and convincing evidence that it acted with fraud. Rohrman further argues that the court's judgment on the claim of fraud is clearly erroneous in that there was no finding as to whether its representation on its invoice with respect to the brake work was made with knowledge or reckless ignorance of its falsity. It asserts that Davis authorized the repairs to the brakes and justifiably understood that those repairs had been completed at the time the sale was concluded and that "[a]ny misrepresentation of fact was not made with knowledge of its falsity by Davis." Appellant's Brief at 6.

[12] The Purchasers respond that it is clear the small claims court did not award punitive damages but rather awarded liquidated damages under the Indiana Crime Victims Relief Act (the "CVRA") found at Ind. Code § 34-24-3-1 and that they raised the CVRA at trial when they filed a motion concerning the award of attorney fees. They assert it is reasonable to infer that Rohrman knew it had not replaced the brakes when it gave them the Work Order stating it had done the work and that the evidence supports a judgment in their favor under the CVRA. They argue that, even if Davis's claim of ignorance is believed, he was not the only employee of Rohrman who represented to the Purchasers that the brakes had been replaced and that the evidence shows that at least Rohrman's mechanics and service department representatives were aware that they had made a false representation to the Purchasers in June 2013 about replacing the brakes. The Purchasers note that the trial court does not cite to the CVRA but neither does it state it was awarding punitive damages, that they argued they were entitled to attorney fees under the CVRA, and that, since this

court presumes the trial court knows the law, we should find that the small claims court's judgment was a finding of criminal deception under the CVRA because it applied the preponderance of the evidence standard, awarded treble damages, and awarded attorney fees. They also contend they are entitled to appellate attorney fees. In reply, Rohrman argues that the Purchasers' notice of claim did not seek recovery under the CVRA but simply asserted a claim for fraud. Rohrman also argues that the Purchasers are not entitled to recover appellate attorney fees in excess of the jurisdictional amount of $6,000 and that attorney fees "are simply a part of 'the amount sought' under Ind. Code §33-29-2-4(b), just as are treble damages." Appellant's Reply Brief at 9.

[13] "To prove fraud, a plaintiff must show: (i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." *Reed v. Reid*, 980 N.E.2d 277, 292 (Ind. 2012) (quoting *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996)). It is well established that the actions of employees and agents of a corporation are attributable to the corporation when the actions are done within the scope of employment. *Mid-Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.*, 715 N.E.2d 906, 909 (Ind. Ct. App. 1999). Thus, a principal is liable for any misrepresentations of his agent undertaken within the scope of the agency, whether or not the principal has knowledge of the fraud. *Id.* This rule is grounded in the sound policy that it is preferable to place the burden of an agent's fraud on the principal rather than

on an innocent third party to the agency relationship. *Id.* Moreover, allowing principals to accept the benefits of their agents' fraudulent transactions without liability for the fraud could lead to an increase in such transactions and reduce incentives to hire honest managers and monitor their behavior. *Id.*

[14] The evidence establishes that Rohrman, through its manager and mechanics, told the Purchasers that it would resurface the front brake rotors and replace the rear brake parts of the Subaru. The Purchasers received a copy of the Work Order indicating the brake work Rohrman agreed to perform, and Cattron inspected the vehicle's brakes and later testified that the rear rotors had more than 3,000 miles on them and it was highly unlikely that the front rotors had only 3,000 miles of wear. Pratico testified that he was given a copy of the Work Order on June 11th after Rohrman had completed its work on the Subaru and before the Purchasers took possession of the vehicle. The evidence supports the court's finding that more likely than not Rohrman did not resurface the front brakes or replace the rear brake pads and rotors as indicated in its Work Order. We will not reweigh the evidence, and we consider only the evidence and reasonable inferences that support the court's judgment. Our review of the record does not leave us with a firm conviction that a mistake has been made.

[15] As for the court's damage award, we note that its order does not expressly provide the basis upon which it awarded treble damages. We will affirm a general judgment if it can be sustained on any legal theory supported by the evidence, *Yanoff*, 688 N.E.2d at 1262, and we presume that the court correctly applied the law. *Eagle Aircraft*, 983 N.E.2d at 657. The Purchasers agree that

the court did not award punitive damages as it did not find the Purchasers established by clear and convincing evidence the facts relied upon. *See* Ind. Code § 34-51-3-2 ("Before a person may recover punitive damages in any civil action, that person must establish, by clear and convincing evidence, all of the facts that are relied upon by that person to support the recovery of punitive damages."). Nevertheless, the CVRA is a basis upon which the small claims court was authorized to award treble damages and attorney fees.[8]

[16] The CVRA provides that, "[i]f a person . . . suffers a pecuniary loss as a result of a violation of IC 35-43 . . . , the person may bring a civil action against the person who caused the loss" for "[a]n amount not to exceed three (3) times . . . the actual damages of the person suffering the loss," the costs of the action, a reasonable attorney fee, and all other reasonable costs of collection. Ind. Code § 34-24-3-1. The CVRA provides for recovery to those who suffer loss as a result of a violation of Ind. Code §§ 35-43, which in turn governs the offenses, among others, of criminal deception and making or delivering a false sales document.[9] The Purchasers assert the evidence supports the finding that Rohrman committed criminal deception. Ind. Code § 35-43-5-3(a) provides in part that a person who "knowingly or intentionally makes a false or misleading

---

[8] The Purchasers cited the CVRA in their memorandum regarding attorney fees.

[9] Ind. Code § 35-43-5-2(b) provides that a person who, with intent to defraud "makes or delivers to another person: . . . a false sales receipt [or] a duplicate of a sales receipt . . . commits making or delivering a false sales document, a Level 6 felony." Ind. Code § 35-43-5-16 provides that a person who, with intent to defraud, makes a false sales receipt, commits making a false sales document, a level 6 felony.

written statement with intent to obtain property . . . commits deception, a Class A misdemeanor."  A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so, Ind. Code § 35-41-2-2(a), and a person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.  Ind. Code § 35-41-2-2(b).  A criminal conviction is not a condition precedent to recovery under the CVRA, and the claimant merely must prove each element of the underlying crime by a preponderance of the evidence. *Klinker v. First Merchants Bank, N.A.*, 964 N.E.2d 190, 193 (Ind. 2012).

[17]  Through its agents Rohrman agreed to resurface the front brake rotors and replace the rear brake parts of the Subaru in order to obtain property, i.e. money, from the Purchasers.  It then provided the Purchasers with the Work Order, stating that it had performed repair work on the vehicle.  The Work Order specifically itemized the costs for resurfacing the front brake rotors and the costs and parts for replacing the rear brake pads and rotors.  After the vehicle had been driven approximately 3,000 miles, the Purchasers had the vehicle inspected by Cattron, who testified his inspection revealed that the rear rotors had more than 3,000 miles on them and it was highly unlikely that the front rotors had only 3,000 miles of wear.  The trier of fact could reasonably conclude by a preponderance of the evidence that Rohrman by its employees or agents knowingly or intentionally made a false or misleading written statement to obtain the Purchasers' money or delivered a false sales receipt to the Purchasers.  The evidence before the small claims court supports its award of

treble damages and attorney fees under the CVRA. *See Palmer Dodge v. Long*, 791 N.E.2d 788, 792 (Ind. Ct. App. 2003) (observing that, although the trial court did not expressly state that it had found criminal conversion, the only theory which could be advanced based upon the evidence which would have made an award of attorney fees proper was criminal conversion, that the evidence supported a finding of criminal conversion, that we presume a trial court knows the law, and concluding that the court awarded attorney fees under the CVRA).[10]

[18]  Turning to the Purchasers' request for appellate attorney fees, we observe that the CVRA provides that a person may recover a reasonable attorney fee, Ind. Code § 34-24-3-1(3), and an award of attorney fees under the CVRA includes appellate attorney fees. *See Heartland Res., Inc. v. Bedel*, 903 N.E.2d 1004, 1008 (Ind. Ct. App. 2009) ("This Court has held that a plaintiff is entitled to attorney's fees, including appellate attorney's fees, when she prevails under the [CVRA]."). However, the small claims docket has jurisdiction over civil actions in which "the amount sought or value of the property sought to be recovered" is not more than $6,000. Ind. Code § 33-29-2-4. The CVRA provides a person may bring a civil action for six enumerated losses, including an amount not to exceed three times actual damages, costs of the action, a

---

[10] Further, to the extent Rohrman asserts the notice of claim did not cite the CVRA, we note that the notice of claim alleged fraud, the elements of fraud and criminal deception overlap significantly, *see Wysocki v. Johnson*, 18 N.E.3d 600, 604 (Ind. 2014), the evidence demonstrates Rohrman committed criminal deception or making or delivering a false sales document, and the Purchasers referenced the CVRA in their memorandum in support of their request for attorney fees.

reasonable attorney fee, certain travel expenses, an amount to compensate for loss of time used for certain activities, expenses incurred to compensate employees and agents for time used for certain activities, and all other reasonable costs of collection. Ind. Code § 34-24-3-1. We conclude that a reasonable attorney fee under the CVRA, which includes appellate attorney fees, *see Heartland*, 903 N.E.2d at 1008, constitutes together with the other enumerated recoverable losses in the statute the "amount sought" under Ind. Code § 33-29-2-4. Thus, as the small claims court has already entered a judgment in the maximum statutory amount, the Purchasers are not entitled to an additional amount under the CVRA for appellate attorney fees. *See Klotz v. Hoyt*, 900 N.E.2d 1, 7 (Ind. 2009) (observing that the plaintiff's total claims which included a claim for attorney fees exceeded the $6,000 small claims jurisdictional limit and remanding for entry of a judgment in the sum of $6,000); *Pinnacle Properties v. Saulka*, 693 N.E.2d 101, 106 (Ind. Ct. App. 1998) (observing the statute setting forth the jurisdictional amount of the small claims court does not distinguish between damages and attorney fees in setting the total jurisdictional amount recoverable),[11] *trans. denied*. Also, we cannot say that Rohrman's arguments on appeal are utterly devoid of all plausibility, that it flagrantly disregarded the rules of appellate procedure, or that its defense was unreasonable or groundless, and thus we conclude that appellate attorney fees

---

[11] The court in *Pinnacle Properties* also noted that the Indiana Small Claims Rules "make no provision for the recovery of attorney's fees in addition to the jurisdictional amount" and Indiana Small Claims Rule 11(B) provides that the party recovering judgment shall recover costs regardless of the amount. 693 N.E.2d at 106, 106 n.5.

are not warranted under Ind. Appellate Rules 66(E) or 67 or Ind. Code § 34-52-1-1.[12]

### *Conclusion*

[19] For the foregoing reasons, we affirm the judgment of the small claims court in favor of the Purchasers and decline to award appellate attorney fees.

[20] Affirmed.

Robb, J., and Mathias, J., concur.

---

[12] This court may assess attorney fees under Ind. Appellate Rule 66(E) where an appeal is frivolous or in bad faith and may award costs under Appellate Rule 67, and Ind. Code § 34-52-1-1 provides a court may award attorney fees if the court finds an action or defense is frivolous, unreasonable, or groundless.